UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENKELS & McCOY GROUP, INC., and HENKELS & McCOY, INC.,

                      Plaintiffs,

    -against-

VERIZON SOURCING, LLC,

                      Defendant.

**COMPLAINT**

**Civil Action No.**

Plaintiffs, Henkels & McCoy Group, Inc. and Henkels & McCoy, Inc., (collectively "H&M"), by and through their undersigned counsel, file this Complaint against defendant, Verizon Sourcing, LLC ("Verizon"), and allege as follows:

## NATURE OF THE CASE

1. H&M is a nationwide utility construction and design company that, in part, builds infrastructure for the nation's communications markets.

2. Verizon is a communications service provider that, through its Fiber One Initiative, develops and creates a network to support cellular and enterprise growth by overbuilding and leveraging Verizon's existing and future network infrastructure.

3. On or about November 16, 2016, H&M entered into an agreement with Verizon whereby H&M was to provide design and construction services to Verizon in connection with Verizon's Fiber One Initiative ("Agreement"). The cities where such services were performed and the scope of services for each city were defined by amendments to the Agreement.

4. Throughout the course of H&M's performance of its services pursuant to the Agreement and its amendments, Verizon instituted a series of changes both by adding additional work, changing and

removing, or de-scoping, work from H&M's original scope, all of which resulted in increased costs and time impacts to H&M.

5. Verizon has unjustifiably failed to compensate H&M for these increased costs and time impacts. As described in more detail below, in certain instances: (i) Verizon has executed an agreement with H&M (for the Detroit de-scope) with agreed upon amounts but has refused to pay such amounts; (ii) Verizon and H&M have reached informal agreements associated with the cost and time impacts for scope changes through extensive negotiations between H&M and Verizon field representatives, but Verizon has inexcusably delayed issuing executed change orders for such amounts and schedule extensions; or (iii) Verizon has deliberately thwarted resolution of the time and cost impacts to H&M through the artifices of repeatedly requesting new or additional information to support the costs incurred by H&M or by otherwise manufacturing unwarranted claims.

6. H&M brings this action to recover all the amounts due from Verizon for the scope changes it implemented in each of the project cities identified below.

## THE PARTIES

7. H&M is a Pennsylvania corporation with offices located at 985 Jolly Road, Blue Bell, Pennsylvania 19422.

8. Verizon is a Delaware limited liability company with an address for service of process at 28 Liberty Street, New York, New York 10005.

## JURISDICTION

9. H&M and Verizon agreed to submit to the jurisdiction of the United States District Court, Southern District of New York pursuant to paragraph 18.1 of the Agreement.

10. H&M and Verizon are citizens of different states and the amount in controversy exceeds $75,000; thus, this Court has jurisdiction pursuant to 28 U.S.C §1332.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

### *Project Amendments*

11. The Agreement contemplated an amendment for each city in which H&M is awarded a contract.

12. On or about March 30, 2017, H&M and Verizon entered into Amendment No. 1 ("Amendment 1"), whereby H&M was to provide its services to Verizon for Portland, Oregon ("Portland Project").

13. On or about May 25, 2017, H&M and Verizon entered into Amendment No. 3 ("Amendment 3"), whereby H&M was to provide its services to Verizon for Detroit, Michigan ("Detroit Project").

14. On or about May 25, 2017, H&M and Verizon entered into Amendment No. 4 ("Amendment 4"), whereby H&M was to provide its services to Verizon for San Diego, California "(San Diego Project")

15. On or about October 31, 2017, H&M and Verizon entered into Amendment No. 6 to the Agreement ("Amendment 6"), which amended both the Agreement and the Amendments.

16. Amendment 1, Amendment 3, Amendment 4, and Amendment 6 shall be referred to collectively as "Amendments") (the Portland Project, Detroit Project, and San Diego Project are referred to collectively as "Projects").

*Project Final Descope Cost Agreements*

17. On September 21, 2021, Verizon and H&M entered into a Final Descope Cost Agreement whereby Verizon would compensate H&M $19,545,473.43 for its Change Order Submission on the Detroit Project ("Detroit FDCA").

*Verizon's Responsibility to Compensate H&M for Project Changes*

18. Paragraph 10.7 of Amendment 6 ("10.7") amends the change order process in the Agreement.

19. 10.7 provides, in part:

a. Within 10 days of receipt of such instruction, the Supplier shall furnish to the Verizon Representative a comprehensive summary of the Change Order effects ("Change Order Submission"), including any financial or scheduling impacts. The forgoing shall include a detailed explanation of the condition, circumstance or occasion which makes the change order request necessary, an itemized breakdown of the costs associated with the change, supported by such documentation as the Verizon Representative may require (with taxes, freight, and materials being separate line items) and shall include, as applicable labor rates, overhead and profit percentages, unit prices and other pricing elements contained in the SOW or Notice to Proceed, as the case may be, or otherwise communicated to the Verizon Representative. Notwithstanding the forgoing, all financial impacts will be subjected to the following basis of evaluation (in order of precedence):

    i. If the Change Order requires additional, substituted or subtracted work, similar to work for which there are rates in the pricing document, to be executed under similar conditions, the Supplier shall use those rates.

    ii. If the Change Order requires additional, substituted or omitted work that is substantially similar to work for which there are rates in the Pricing Document, or is to be executed under somewhat similar conditions, the

determination shall be on the basis of the rates in the pricing document to the extent reasonable.

iii.     If the financial impact cannot be determined under subsections (i) or (ii) above, fair valuation shall be made based on rates payable for similar work in the locality in which the work is to be performed (open market valuation). In no event shall charges for a Change Order work be greater than that described in this subsection (iii).

20. 10.7 further provides, in part:

b.     Within 10 days of receipt of the Suppliers completed Change Order Submission, Verizon shall make a FINAL determination of the Change Order impact and the amount payable / deductions due from the Supplier, based on the Change Order Submission.

### *Verizon's Changes to H&M's Scope of Work on the Projects*

21. H&M submitted a bid for each Project based on information provided by Verizon in a request for proposal ("RFP") issued for each project, which included direction for project duration, project footage, and ratio of aerial to underground construction type.

22. H&M reviewed the information provided by Verizon in its RFP and established a unit price for its work, which was arrived at by averaging its costs to perform the work included in its scope. Such work had varying levels of complexity based on geographic considerations, unknown sub-surface conditions, and river crossings. Other levels of complexity included unknown timing of whether Verizon could obtain the large volume of pole attachment approvals, municipal permits and franchise agreements from the various governing agencies that would meet H&M's schedule for the projects.

23. Throughout the course of the Projects, Verizon modified the scopes of the Projects in one or more of the following manners: (i) adding scope, (ii) deleting scope, (iii) changing scope due to Verizon's inability to obtain franchise and right-of-way agreements, and (iv) changing the electronic formatting platforms to transmit data and designs to Verizon.

24. Due to Verizon's modifications associated with each Project, H&M suffered significant financial and scheduling impacts.

25. In addition to its direct costs incurred by H&M to address Verizon's scope modifications, H&M incurred significant impacts to its performance, including increased construction and project management costs, extended traffic control time, additional level of effort for potholing, rock excavation and boring, management of permitting requirements, changing equipment and crews needed for changed designs of aerial to underground; obtaining and training administrative personnel and designers to transfer, review and correct Verizon's data in its changing electronic platforms.

26. As a result of these increased costs, H&M prepared and submitted Change Order Submissions to Verizon in accordance with the terms of the Agreement and Amendments.

27. Verizon responded to H&M's Change Order Submissions in one of three ways:

   a. Verizon negotiated and executed the Final Descope Cost Agreement in Detroit, however, Verizon failed to compensate H&M in accordance with this Final Descope Cost Agreement;

   b. Verizon field representatives negotiated agreements to compensate H&M for its increased costs, however, Verizon acting in bad faith, has delayed finalizing those agreements; and

   c. Verizon has delayed reaching agreements by repeatedly, and in bad faith, requesting H&M to submit additional information and/or by raising unsupported claims relating to H&M's performance.

*Portland Project*

28.  During H&M's performance of its work on the Portland Project, aerial high-volume agreements were delayed and utility processing timelines for aerial permits took longer than Verizon expected.

29.  As a result of the delays Verizon encountered in connection with the aerial high-volume agreements and permits, Verizon directed H&M to redesign and/or re-route a significant portion of the Portland Project as underground.

30.  In total, Verizon's changes to the Portland Project resulted in an additional thirty (30) percent of the work designed originally as aerial to be installed underground; for a total of sixty-three (63) percent of the entire scope of the Portland Project requiring underground installation.

31.  Verizon's re-design to a primarily underground system at the Portland Project required significant additional work by H&M to build an underground path in heavy cobble and rock. Because of Verizon's re-design, pricing units previously negotiated did not include a pricing unit for this new cobble and rock work, as well as other indirect unrecoverable costs.  The Parties negotiated a new/blended rate, entitled a C-105 rate, to cover the new cobble and rock work, as well as blending indirect costs into this resulting C-105 rate.  This blended/negotiated new C-105 rate would provide the agreed-upon recovery and cost impact to H&M based on H&M's performing work for a stipulated quantity of 984,543 lineal feet. The de-scope substantially reduced the agreed upon stipulated footage, thus denying H&M the ability to recover the expended cost for the impact of the previously submitted Notices of Potential Change ("NOPC's or Supplier Claims) and negotiated C-105 rate.

32. The addition of thirty (30) percent more underground work to H&M's scope was a material and significant change to the Agreement.

33. Additionally, on or about January 19, 2021, Verizon issued a de-scope notice to H&M removing from H&M's scope the low complexity work with lower costs and requiring H&M to perform only the most complex and costly work in its scope for the Portland Project.

34. Verizon's de-scoping of the Portland Project constituted material changes to the Agreement.

35. On or about March 9, 2021, H&M submitted its Change Order Submission in the amount of $10,143,674.67 to Verizon for its additional costs incurred on the Portland Project.

36. Rather than make a final determination regarding H&M's claims within 10 days, as required by 10.7, Verizon issued a series of requests for additional information and clarifications.

37. Since March 9, 2021, Verizon delayed processing H&M's Change Order Submission for the Portland Project by repeatedly requesting additional information or the same information in a different format.

38. Verizon has intentionally, willfully and in bad faith delayed approval and payment of the Portland Change Order Submission.

39. To date, Verizon has failed to pay the sum of $10,143,674.67 which is due and owing to H&M for the de-scope of portions of the Portland Project.

40. Verizon failed to compensate H&M for the Change Order Submission on the Portland Project in accordance with the Agreement, Amendment 1, and Amendment 6.

*San Diego Project*

41. Similarly, Verizon de-scoped H&M's work on the San Diego Project on several occasions, including on April 30, 2019, October 21, 2019, March 19, 2020, and January 26, 2021. These significant delays resulted in time extended non-production costs, unscalable indirect staffing and management, increased costs associated with market conditions outside the original contract dates, and unrecoverable sunk costs due to the limited mileage build.

42. Verizon issued three key de-scoping or change orders for the San Diego Project that remain unresolved. The most recent open de-scope, entitled Change Order 8 ("CO_8") that H&M submitted multiple responses, beginning on February 2, 2021. Previous de-scopes or changes issued by Verizon include Change Order 7 ("CO_7"), that H&M submitted multiple responses, beginning on June 19, 2020. Verizon also issued a previous de-scope, entitled Change Order 19 ("CO_19, 19B and 19C") that H&M submitted multiple responses, beginning on January 22, 2021. All of these descopes or change orders remain unresolved and unpaid to H&M.

43. Beginning in June 2020 with H&M's response to CO_7, Verizon did not respond to H&M's repeated direction requests on the scope and schedule for well over a year, causing many costs that could not be mitigated by H&M.

44. Verizon's changes to the San Diego Project constituted material changes to the Agreement.

45. On or about April 22, 2021, H&M submitted its consolidated response, to a new pricing template from Verizon, entitled a Partial Completion Pricing Matrix with Lump Sum Impacts, for the San Diego Project in the amount of $25,651,911.49.

46. Rather than make a final determination regarding H&M's claims within 10 days, as required by 10.7, Verizon issued a series of requests for additional information and clarifications.

47. From June 2020 to date, Verizon delayed processing H&M's Change Order Submissions for the San Diego Project by repeatedly requesting additional information or the same information in a different format.

48. Verizon has intentionally, willfully and in bad faith delayed approval and payment of the San Diego Change Order Submission.

49. To date, Verizon has failed to pay the sum of $25,651,911.49 which is due and owing to H&M for the San Diego Project.

50. Verizon failed to compensate H&M for the Change Order Submission on the San Diego Project in accordance with the Agreement, Amendment 4, and Amendment 6.

*Detroit Project*

51. Verizon followed a similar course of action in making material changes to the Detroit Project by adding work and de-scoping work from H&M.

52. On September 21, 2021, Verizon and H&M entered the Detroit FDCA whereby Verizon would compensate H&M for its Change Order Submission on the Detroit Project.

53. Pursuant to the Detroit FDCA, Verizon agreed to pay to H&M $19,545,473.43 for its Change Order Submission on the Detroit Project.

54. However, despite the Detroit FDCA to compensate H&M for the Change Order Submission on the Detroit Project, Verizon failed to do so. Contrary to the agreement to pay H&M $19,545,473.43, Verizon only paid H&M $11,082,710.60.

55. In total, $8,462,762.80 remains due and owing to H&M on the Detroit Project.

56. Verizon has failed to compensate H&M in full for the Change Order Submission on the Detroit Project in accordance with the Detroit FDCA, the Agreement, Amendment 3, and Amendment 6.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

*Portland Project*

57. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 56 above as though fully set forth herein.

58. H&M has performed its obligations under the Agreement and its amendments, including but not limited to Amendment 1 and Amendment 6 and section 10.7 thereof.

59. H&M is entitled to payment in full on its Change Order Submission on the Portland Project.

60. Verizon materially breached the Agreement and its amendments including Amendment 1 and Amendment 6 and section 10.7 thereof, by failing to pay H&M for its Portland Change Order Submission.

61. Based on the foregoing, H&M has been damaged by at least $10,143,674.67 in connection with the Portland Project due to Verizon's breach of the Agreement and its amendments, including Amendment 1 and Amendment 6, plus interest, costs and attorneys' fees thereon.

*San Diego Project*

62. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 61 above as though fully set forth herein.

63. H&M has performed its obligations under the Agreement and its amendments, including but not limited to Amendment 4 and Amendment 6 and section 10.7 thereof.

64. H&M is entitled to payment in full on its Change Order Submission on the San Diego Project.

65. Verizon materially breached the Agreement and its amendments including Amendment 4 and Amendment 6 and section 10.7 thereof, by failing to pay H&M for its Change Order Submission on the San Diego Project.

66. Based on the foregoing, H&M has been damaged by at least $25,651,911.49 in connection with the San Diego Project due to Verizon's breach of the Agreement and its amendments, including Amendment 4 and Amendment 6, plus interest, costs and attorneys' fees thereon.

*Detroit Project*

67. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 66 above as though fully set forth herein.

68. H&M has performed its obligations under the Agreement and its amendments, including but not limited to Amendment 3, Amendment 6, and section 10.7 thereof.

69. H&M is entitled to be compensated for the changes to the Detroit Project.

70. Verizon materially breached the Agreement and its amendments including Amendment 3, Amendment 6, and section 10.7 thereof, by failing to pay H&M for its Detroit Change Order Submission.

71. Verizon materially breached the Detroit FDCA by failing to compensate H&M on the Detroit Project.

72. Based on the foregoing, H&M has been damaged by at least $8,462,762.80 due to Verizon's breaches on the Detroit Project, plus interest, costs and attorneys' fees thereon.

## SECOND CAUSE OF ACTION
### (Account Stated)

*Detroit Project*

73. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 72 above as though fully set forth herein.

74. Verizon's Agreement of September 20, 2021 for H&M's Detroit De-Scope Change Order Submission was in the amount of $19,545,473.43. Of that agreed-upon amount, $8,462,762.80 remains unpaid.

75. An account was stated in the amount of $8,462,762.80 by and between H&M and Verizon, without any objection by Verizon.

76. Despite due demand therefor, Verizon has failed and refused to make payment to H&M for the account.

77. Based on the foregoing, H&M seeks an award of damages against Verizon in the amount of $8,462,762.80 for an account stated on the Detroit Project.

## THIRD CAUSE OF ACTION
### (Breach of the Duty of Good Faith and Fair Dealing)

*Portland Project*

78. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 77 above as though fully set forth herein.

79. As with any agreement, the Agreement gives rise to a duty of good faith and fair dealing on the part of Verizon.

80. That duty precludes Verizon from acting in any capacity that is adverse or harmful to the interests of H&M.

81. Verizon breached the duty of good faith and fair dealing it owes to H&M on the Portland Project by, *inter alia*, through its field representatives it negotiated agreements to compensate H&M for its increased costs, then willfully, intentionally and in bad faith delayed finalizing those agreements, the delay of which was intended to prejudice H&M's entitlement to compensation; assuring H&M that it would be paid for its Change Order Submissions while H&M dutifully and diligently continued to carry out the changed work on the Project; delaying reaching agreements to compensate H&M for its Change Order Submissions on the Portland Project by repeatedly and in bad faith requesting H&M submit additional information with no intention of ever compensating H&M for its Change Order Submissions.

82. The breaches of the duty and good faith and fair dealing by Verizon on the Portland Project damaged H&M in an amount to be determined at trial, but to be in no event less than $10,143,674.67 consisting of unpaid compensation for work and additional work H&M performed, loss of productivity and loss of profits, plus punitive damages, interest, costs and attorneys' fees.

*San Diego Project*

83. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 82 above as though fully set forth herein.

84. As with any agreement, the Agreement gives rise to a duty of good faith and fair dealing on the part of Verizon.

85. That duty precludes Verizon from acting in any capacity that is adverse or harmful to the interests of H&M.

86. Verizon breached the duty of good faith and fair dealing it owes to H&M on the San Diego Project by, *inter alia*, through its field representatives it negotiated agreements to compensate H&M for its increased costs, then willfully, intentionally and in bad faith delayed finalizing those agreements, the delay of which was intended to prejudice H&M's entitlement to compensation; assuring H&M that it would be paid for its Change Order Submissions while H&M dutifully and diligently continued to carry out the changed work on the Project; delaying reaching agreements to compensate H&M for its Change Order Submissions on the San Diego Project by repeatedly and in bad faith requesting H&M submit additional information with no intention of ever compensating H&M for its Change Order Submissions.

87. The breaches of the duty and good faith and fair dealing by Verizon on the San Diego Project damaged H&M in an amount to be determined at trial, but to be in no event less than $25,651,911.49, consisting of unpaid compensation for work and additional work H&M performed, loss of productivity and loss of profits, plus punitive damages, interest, costs and attorneys' fees.

**Detroit Project**

88. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 87 above as though fully set forth herein.

3046435.1

89.     As with any agreement, the Agreement gives rise to a duty of good faith and fair dealing on the part of Verizon.

90.     That duty precludes Verizon from acting in any capacity that is adverse or harmful to the interests of H&M.

91.     Verizon breached the duty of good faith and fair dealing it owes to H&M on the Detroit Project by, *inter alia*, negotiating and executing a Final Descope Cost Agreement and failing to compensate H&M in accordance with this Final Descope Cost Agreement with no intention of ever compensating H&M as agreed; assuring H&M that it would be paid for its Change Order Submissions while H&M dutifully and diligently continued to carry out the changed work on the Project; delaying reaching agreements to compensate H&M for its Change Order Submissions on the Detroit Project by repeatedly and in bad faith requesting H&M submit additional information with no intention of ever compensating H&M for its Change Order Submissions.

92.     The breaches of the duty and good faith and fair dealing by Verizon on the Detroit Project damaged H&M in an amount to be determined at trial, but to be in no event less than $8,462,762.80, consisting of unpaid compensation for work and additional work H&M performed, loss of productivity and loss of profits, plus punitive damages, interest, costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

93.      H&M repeats and realleges each and every allegation set forth in paragraph 1 through 92 above as though fully set forth herein.

94. H&M conferred a benefit on Verizon by performing work on the Projects and providing services, including but not limited to executing the changes implemented by Verizon.

95. Verizon knowingly accepted and used for its own purposes and benefit, H&M's work at the Projects.

96. It is against equity and good conscience to permit Verizon to retain the value of what H&M provided to it.

97. H&M is entitled to fair and just compensation for the work and services it provided for the benefit of Verizon.

98. As a result of the failure of Verizon to compensate H&M for the work it performed, H&M has been damaged and Verizon should be ordered to compensate it, in an amount not less than $44,258,348.96 ($8,462,762.80 for the Detroit Project, $25,651,911.49 for the San Diego Project, and $10,143,674.67 for the Portland Project) plus lost profits, interest, punitive damages and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**(Violations of New York's Prompt Payment Act)**

99. H&M repeats and realleges each and every allegation set forth in paragraph 1 through 98 above as though fully set forth herein.

100. H&M delivered Change Orders to Verizon for work and services performed by H&M pursuant to the Agreement and in connection with the Project.

101. Verizon failed and/or refused to make payment to H&M in a timely and prompt manner in violation of the governing prompt payment requirements and regulations set forth in Article 35-E of the

General Business Law of the State of New York, known as the "Prompt Payment Act," leaving a balance due and owing to H&M in the amount of $44,258,348.96.

102. By reason of the foregoing, Verizon violated the Prompt Payment Act.

103. By reason of the foregoing, Verizon is liable to H&M in the amount of 44,248,348.96 ($8,462,762.80 for the Detroit Project, $25,651,911.49 for the San Diego Project, and $10,143,674.67 for the Portland Project) plus interest, costs, attorneys' fees and disbursements.

**WHEREFORE**, Plaintiff demands judgment:

(1) On its first cause of action in an amount to be proven at trial, but no less than Forty-Four Million, Two Hundred and Fifty-Eight Thousand, Three Hundred and Forty-Eight ($44,258,348.96) Dollars and Ninety-Six Cents ($8,462,762.80 for the Detroit Project, $25,651,911.49 for the San Diego Project, and $10,143,674.67 for the Portland Project), together with attorneys' fees, costs, disbursements and applicable interest thereon;

(2) On its second cause of action in an amount to be proven at trial, but no less than Eight Million, Four Hundred Sixty-Two Thousand, Seven Hundred Sixty-Two ($8,462,762.80) Dollars and Eighty Cents together with punitive damages, attorneys' fees, costs, disbursements and applicable interest thereon;

(3) On its third cause of action in an amount to be proven at trial, but no less than Forty-Four Million, Two Hundred and Fifty-Eight Thousand, Three Hundred and Forty-Eight ($44,258,348.96) Dollars and Ninety-Six Cents ($8,462,762.80 for the Detroit Project, $25,651,911.49 for the San Diego

Project, and $10,143,674.67 for the Portland Project), together with attorneys' fees, costs, disbursements and applicable interest thereon;

(4) On its fourth cause of action in an amount to be proven at trial, but no less than Forty-Four Million, Two Hundred and Fifty-Eight Thousand, Three Hundred and Forty-Eight ($44,258,348.96) Dollars and Ninety-Six Cents ($8,462,762.80 for the Detroit Project, $25,651,911.49 for the San Diego Project, and $10,143,674.67 for the Portland Project), together with attorneys' fees, costs, disbursements and applicable interest thereon; and

(5) On its fifth cause of action in an amount to be proven at trial, but no less than Forty-Four Million, Two Hundred and Fifty-Eight Thousand, Three Hundred and Forty-Eight ($44,258,348.96) Dollars and Ninety-Six Cents ($8,462,762.80 for the Detroit Project, $25,651,911.49 for the San Diego Project, and $10,143,674.67 for the Portland Project), together with attorneys' fees, costs, disbursements and applicable interest thereon.

Dated: New York, New York
   November 18, 2021

Respectfully submitted,

**ZETLIN & DE CHIARA LLP**

By:   s/Jaimee Nardiello (JN3173)
    Michael S. Zetlin
    Jaimee L. Nardiello
    *Attorneys for Plaintiff*
    Henkels & McCoy Group, Inc.
    Henkels & McCoy, Inc.
    801 Second Avenue
    New York, New York 10017
    (212) 682-6800